

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Homer P. Rainey, President
University of Texas
Austin, Texas



Dear Dr. Rainey:

Opinion Number O-5538
Re: Supplementation of salary of
University faculty members oc-
cupying full time itemized
positions under Chapter 389,
Acts of the 48th Legislature;
limitations of additional com-
pensation payable from funds
received under War Training
Program contracts at the Uni-
versity of Texas.

Your letter of November 6, 1943, reads, in part, as
follows:

"I should like to submit for your considera-
tion the question stated below which is based on
the following fact situation:

"1. During the present emergency The Univer-
sity of Texas is conducting certain special pro-
grams, other than the Navy V-12 Training Program
where Naval trainees are regular students, which
are financed by the Federal Government. Each
program is based on a contract between some agency
of the Federal Government and The University of
Texas. Under each program the Federal Government
pays to The University of Texas certain sums of
money in accordance with the contract provisions
and this money is in turn paid out through our
office of the Auditor for the purposes agreed

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Homer P. Rainey, page #2

upon. In the administration and supervision
of these programs it has been necessary for us
to use certain full-time faculty members who
devote time beyond their full-time University
duties to these purposes. In order to reward
faculty members for these additional responsi-
bilities, the University grants to them addi-
tional compensation out of the Federal funds
allocated to this institution. Administrative
Memorandum No. I regularizes this procedure. A
copy of this memorandum is attached for your
information.

"2. One of these programs is the Engineer-
ing, Science, and Management War Training Program
which is commonly referred to as ESMWT. Under an
annual general contract with the Office of Edu-
cation, The University of Texas has agreed to give
throughout the State certain short term courses
(usually 12 weeks) either for the purpose of train-
ing individuals already working in industry or to
prepare individuals for certain specialized work
in industry. From time to time specific proposals
for these courses are submitted to the U. S. Office
of Education for approval; and when approved, the
courses are given according to the plan outlined
in the proposal. These individuals, therefore,
are not members of our instructional staff. The
regular members of our instructional staff who
participate in this program perform functions
purely of educational supervision; that is, they
assist in planning the course, preparing the
course outline, and supervising to a limited ex-
tent the individual who teaches the course. Their
responsibilities in this connection, therefore,
have no relation to their full-time duties in
residence instruction. Their compensation, usual-
ly at the rate of from $2.00 to $4.00 per clock-
hour, is specifically approved by the Federal
Government at the time the proposal for the course
is approved.

Honorable Homer P. Rainey, page #3

"3. Another program is the CAA-War Training Service, which is the second step in the long process of training Naval Aviation Cadets. This work, also of a short term character, is carried out under contract with the Navy Department. Instruction in this program is carried out by special instructors hired for this purpose. The supervision of the entire program on this campus, however, is a responsibility of a full-time member of the University teaching staff.

"4. A final program is the War Research Laboratory of the Department of Physics. This highly confidential research project is based on a contract with the U. S. Office of Scientific Research and Development. It is purely a research project which has been undertaken by certain full-time teaching members of the staff of the Department of Physics who devote all of their spare time, above their regular University duties, to this work.

"On the basis of this fact situation, I should like to present the following question:

"Is the amount of compensation paid to full-time faculty members who participate in these special programs in the manner indicated limited by the first paragraph of Subsection (2) of the General Provisions of the Educational Appropriation Act for the current biennium?"

1.

Our understanding of the several contracts involved in the fact situations outlined in your inquiry is that such contracts are made by the University with the Federal Government, and provide for the payment of funds to the University for the performance by it of certain work. In our Opinion Number O-6636 we advised that the use of funds derived from similar contracts between A. & M. College and the United States Government was governed, as to the amount by which itemized

Honorable Homer P. Rainey, page #4

full-time instructional salaries at that school might be adjusted by the limitations of Subsection (2) of the "General Provisions" of the Appropriation Act; this subsection reads:

"Subsection (2). Salary Provisions. No salary appropriated herein shall be supplemented out of student fee funds, dormitory funds, or local funds, except out of the Pure Feed Fund at the Agricultural and Mechanical College or out of funds received from the United States Government or its agencies, unless so ordered by the governing board of the institution to which such salary or salaries apply, at a regular meeting with at least a majority of the members of such board present, and such order shall be entered in the minutes of the proceedings of said board and shall set forth fully the reasons therefor. No full time instructional salary as itemized herein shall be adjusted to exceed an amount above the maximum full professor's salary as herein itemized to be appropriated from the General Revenue Fund of the State for the particular institution to which said salary or salaries apply, unless the maximum salary is being received in which case such adjustment may be made not to exceed ten (10) per cent above such maximum salary so received. It is further provided that compensation for correspondence and/or extension teaching as provided herein and compensation from bequests and gifts, unless so limited by the donor, shall be excluded from the salary limitations of this paragraph. * * * *

"Full time employees on twelve (12) months basis may receive not more than Two Hundred and Fifty ($250.00) Dollars for correspondence course and/or extension center teaching, and may not be paid additional money for summer school teaching, and full time employees on a nine (9) months basis may be paid for correspondence and/or extension center teaching or summer school or other services during the remaining three (3) months of the fiscal year, but may not receive more than Two Hundred and Fifty ($250.00) Dollars per annum for correspondence course teaching during the fiscal year and/or extension center work during the regular nine (9) months session."

Honorable Homer P. Rainey, page #5

You have suggested, however, that the limitations upon supplementation do not apply to the use of funds received from the United States Government or its agencies, in view of the first sentence of Subsection (2), above quoted. That sentence, as we read it, is neither a limitation upon the amount by which itemized salaries may be supplemented, nor an exception to other provisions limiting the extent of salary adjustments. It is a procedural limitation; viz., that salaries for which itemized appropriations are made by the Legislature shall not be supplemented out of local funds of the institution, except upon order of the governing board at regular meeting, entered upon its minutes and giving the reasons for its action. Use of Pure Feed Funds at A. & M. College, and funds received from the United States Government or its agencies for supplementation is excepted from and is not governed by the requirements of this limitation, but the exception can be no broader than the rule itself. A proviso "is to be restricted and applied to the preceding enacting clause of the statute, and its effect is to limit the scope of that clause and to except out of its general terms the case stated in the proviso which otherwise would be embraced in the language used." Potter v. Robison, 102 Tex. 448, 119 S. W. 90; see also, Penel v. McQuiston, 105 Tex. 299, 147 S.W. 867. Hence, the exemption as to use of funds derived from Federal sources is restricted in its scope to the procedural limitations embraced in the sentence under consideration.

The limitation upon the amount by which itemized instructional salaries may be adjusted is expressed in the second sentence of Subsection (2), and the only general exceptions to this limitation applicable to your inquiry are those of the next following sentence providing that compensation for correspondence and extension teaching, to the extent allowed under Subsection (2), and compensation from bequests and gifts "unless so limited by the donor" shall not be considered in determining the maximum extent to which instructional salaries may be adjusted.

The fact, therefore, that the funds proposed to be used in supplementation of instructional salaries itemized as full-time positions in the current Appropriation Act (Chapter 399) are funds derived from Federal sources, but not as a gift or bequest, does not exempt the supplementation from the limitations of Subsection (2) of the General Provisions; on the contrary, it is expressly provided by the first sentence found

Honorable Homer P. Rainey, page #6.

under the heading "General Provisions" that expenditures under the appropriations made by the Act, "whether from the State General Revenue Fund, local institutional funds or any other receipts and funds whatsoever, except bequests and gifts, shall be subject to the following provisions," including thereby the limitations of Subsection (2). The exception of gifts and bequests from the limitations upon maximum supplementation "makes plain the intent that the statute should apply in all cases not excepted." J. C. & S. F. Ry. Co. v. Temple Grain & Hay Co., 122 Tex. 258, 58 S. W. (2d) 47; Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Tex. 21, 52 S. W. (2d) 56.

2.

You inquire further whether the use of such funds for supplementation of itemized salaries would fall within Subsection (11) of the General Provisions, which states that "The general provisions made in this Act shall not apply to athletic or extramural departments, and as to these exceptions, the governing board shall make such necessary rules and adjustments as may be deemed advisable." Clearly, under this exception, the salaries of persons who are employed in the extramural departments of the University may be adjusted by the governing board "as may be deemed advisable."

It is not our understanding of your inquiries that there is doubt concerning adjustment of the salaries of those employees who hold positions in the extramural departments; but that your question is whether salaries of persons holding full-time instructional positions in the physics department or mathematics department or other department outside of those recognized as extramural or athletic, may be supplemented from funds arising from activities of the athletic or extramural departments without regard to the limitations of Subsection (2), supra. Our Opinion O-126 reasoned that this might be done, although the point was not essential to determine the inquiry there considered. Although the opinions of the Attorney General are persuasive with the courts (Heath v. Diversion Lake Club,

Honorable Homer P. Rainey, page #7

33 S. W. (2d) 479, nevertheless, where the court is of the opinion that the construction placed upon a statute by the Attorney General is erroneous, and that the meaning of the statute is plain, it will not follow or be bound by his opinion (Jones v. Marrs, 114 Tex. 62, 263 S. W. 570). In view of this rule, we have re-examined our Opinion O-126 and believe it should be modified, for the reasons following.

Inspection of the Appropriation Act, insofar as it relates to the University of Texas, discloses that the several items of appropriation are classified under several principal headings; i.e., "Main University," "Extramural Divisions," "Medical Branch" and "Texas Memorial Museum." Under the heading "Main University" are listed the items of appropriation for most of the instructional positions at the University, whereas under the heading "Extramural Divisions" are listed appropriations for additional positions for the graduate school, for the division of research, and for the division of extension. In providing that "The general provisions of this Act shall not apply to athletic or extramural departments," we think it clear that the Legislature had in mind the positions and items enumerated under that classification, and that it was not thereby their intention to exempt from the limitations of the General Provisions the amount by which a full-time instructional salary, listed under the heading "Main University," could be supplemented from funds received from or appropriated for athletic or extramural activities. Had it been the intention of the Legislature to exempt the use of extramural and athletic funds from operation of the limitations upon supplementation of full-time instructional salaries, it doubtless would have used language more aptly expressing that intention. As we have hereinbefore observed, the only funds expressly excluded from the restrictions are those derived from bequests and gifts, disclosing, we think, that the intention was to embrace funds from all other sources. In enacting Subsection (11), the Legislature did not add another exception to the classes of funds lying, together with gifts and bequests, outside of the restrictions upon supplementation; the change of phrasing requires that it

685

Honorable Homer P. Rainey, page #8

be presumed that an exception to use funds was not contemplated, but that the exception of the extramural and athletic departments has reference to matters other than to funds appropriated to or arising out of the activities of those departments. Opinion No. O-126 is modified insofar as it expresses a contrary view.

Whether or not the funds in question are considered as derived from extramural activities, the limitations upon supplementation of salaries of full-time instructional positions listed in the appropriation bill under headings other than that of "Extramural Divisions" would be applicable, though the funds proposed to be used were derived from or were appropriated for extramural or athletic activities.

5.

The final inquiry suggested by your letter is whether work done under the Engineering, Science and Management War Training Program, as outlined in your second numbered paragraph, is extension center work within the contemplation of the term used in Chapter 309, supra. We are of the opinion that it should be so regarded, and that the ordinary conception of the term would embrace terminal instructional work of the nature defined in your letter. The fact that credit toward a degree is not allowed for such work under present rules of the University does not argue against this conclusion, in our judgment.

Nor does the thought that this work is extramural conflict with this view; the extension division is classed by the Legislature in the Appropriation Act as one of the two extramural divisions, as the items of appropriation for the division of extension are carried under the heading of, and within the summary total for the "extramural Divisions." The fact that extension work is classified as extramural by the Act is further persuasive of the correctness of our conclusion that supplementation of full-time instructional salaries listed under other headings of the Appropriation Act is subject to the limitations as to amount specified by Subsection (2), though the funds used are derived from extramural or athletic activities; this for the reason that compensation for extension center work, up to the amount specified under subsection (2), is excepted from the

Honorable Homer P. Rainey, page #9

limitation on amount, indicating the legislative construction of the breadth of the limitation.

This opinion, as is our Opinion O-5636, is not to be construed as relating to salaries for positions not itemized in the Act as full-time instructional salaries. Limitations upon salaries for positions not itemized in the Act are contained in the fourth paragraph of Subsection (2), supra, and are considered in our Opinion O-5440.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Gaynor Kendall
Assistant

GK-s

JUN 14, 1943

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN